Chief Justice Robertson
delivered the Opinion of the Court.
Black having, as constable, several executions of fieri facias against one Rudd, levied them op a slave (Joe) in his possession, mortgaged by him, more than two months before, to Haley and Linville, by a deed which had not been recorded; and the mortgagees having, on the next day, taken the slave from the possession of Black, without his consent, and sold or otherwise converted him to their own use, he sued them, in an action of trover and conversion, and recovered a judgment for damages equal to his estimated value. Against that judgment they now urge two objections:—first—that there was no sufficient proof that at the time of the levy, Black was de jure a constable; and, second—that the assessment of damages was exorbitant.
To enable an officer to maintain an action to recover property taken from him, after he had levied upon it, proof that he was in office at the time of the levy, is essential.
The records of a county court, showing several bonds executed by a constable, biennially, the last within one year of the time when the right in question accrued to him as constable, with proof that he was recognised as such, by the county court, held to be sufficient proof that he was in office, without proof that he took the oaths, or was allotted to a district.
Parol proof that a constable was sworn in, as it goes to confirm, not to contradict, the record of his appointment, is admissible, and effectual.
The measure of damages in trover, is the value of the plaintiff’s interest in the thing converted. An officer acquires but a qualified property by the levy of an execution; the legal title, subject the levy, remains as before—the owner and officer becoming tenants in common. So held, that where a constable levied on a slave, which was afterwards taken from him by mortgagees, claiming under a mortgage void as to creditors, and the constable brought trover against them—the amount of the execution, being less than the value of the slave—is the measure of damages. A verdict for the full value is excessive, and ground for a new trial.
It was certainly necessary to a recovery, that Black, should shew that he was constable, and had, therefore, acquired, by the levy of the executions, such a special property in the slave as entitled him to damages; and we think that he sufficiently established his legal authority, by records of the County Court, shewing successive official bonds given by him, biennially, several times, and the last time within less than a year before i? v i the levy. The record does not, it is true, show that he took the prescribed oaths of office; nor does it expressly show any order appointing him constable, or allotting to him any particular district. But these omissions are not, in our opinion, material. Certainly, as it appears, that he had been recognised by the County Court, for many years, as a constable, and had frequently given bond and security as such, we would not be allowed to presume that he had not been legally appointed and qualified; on the contrary, the legal, as well as rational presumption is, that he was regularly and fully appointed. And moreover if, at the date of his last bond, a new oath was necessary, and if, in the absence of any positive evidence respecting the administration of such an oath, we could presume that it had been pretermitted, and even, if also, in consequence of that failure, he could not have had legal authority to act officially — still there is parol proof of the fact that he was properly qualified, and as such evidence does not contradict the record, and only confirms a presumption fairly arising from it, we do not doubt its competency, and effectiveness.—And there can be no doubt that, his appointment was not invalidated by the non-allotment of a special district. The law respecting constable’s districts is altogether directory.
But the other objection to the judgment is more formidable.
The mortgage, for want of registration within the *178 time prescribed by law, being void so far as the execution creditors were concerned, the constable had a right to levy those executions on Joe, and to sell him for the purpose of making the amount of them; and so far he could maintain this suit against even the mortgagees. But the legal title being in them, or the mortgagor, subject only to the claims of the creditors of the mortgagor, and to a settlement between him and the mortgagees, hereafter to be made, the latter should, as to this suit, be considered as standing in the attitude of tenants in common with the constable, either as trustees of the legal title, or as representatives of the mortgagor, — the constable’s interest extending to so much of the value of the slave as may be necessary for satisfying the executions, and theirs being the residue of his value. And in such a case, the criterion of assessment in an action of trover, is the value of the plaintiffs title. The constable is entitled to recover no, more than the damage he had sustained by the conversion of that to which he had a right, and so far as that right was beneficial to him, or to those whom he represented. After a judgment to that extent, he would not be responsible to Rudd; because, having been virtually evicted as to the residue, by legal authority, he could not be required, as the bailee of the law, to make restitution. The ulterior rights of the mortgagor and mortgagees are not litigated or established in this case; and, whatever they may happen to be, they should not affect the legal interest of the present parties. So far as this suit is concerned, the mortgagees occupy the place of the mortgagor, and the judgment should be just what it should have been, had there been no mortgage, and had Rudd himself, as owner of the slave, done what the plaintiffs in error did with him. And if the ower of a slave levied on by an officer, tortiously convert him to his own use, the officer, thus wronged, could surely not justly claim, in an action of trover, more than the amount which he had a right to make by a sale of the slave under execution.
If this judgment stand, there must be restitution of a part of it, either to the mortgagor or the mortgagees. If it should be made to the former, the rights of the latter *179 might be frustrated; and if it should be made to the latter, as prima facie it should be, that fact alone would be sufficient to shew that, the amount restored was improperly taken from them in the first instance.
We are, therefore, of the opinion that, as the aggregate amount collectable on all the executions in the hands of the constable, against Rudd, was less than the assessed vale of the slave, and the jury found the amount of that value, in damages, the verdict is for a larger sum than the facts and the law allowed.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.